NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

FRANK LUKRIDGE, PETITIONER, v. FREDERICK SNARE CORPORATION, RESPONDENT.

For the petitioner, *John B. Graf.*

For the respondent, *Carl S. Kuebler,* of *McDermott, Enright & Carpenter.*

\*     \*     \*     \*     \*     \*     \*

A petition was filed by Frank Lukridge in which he alleged that he was employed by the respondent, Frederick

Snare Corporation, as a laborer, and that on or about August 12th, 1927, he sustained an injury in an accident arising out of and in the course of his employment with the respondent, which occurred in the following manner as described in the petition: "Right hand injured when petitioner was disconnecting air gun and air gun fell on hand." As a result of this accident he claims to have sustained a permanent injury to his hand.

It is admitted by the respondent, that at the time of the accident Frank Lukridge was employed by it as a laborer receiving wages of $49.50 per week, but that he did not sustain any injury from any accident arising out of or in the course of his employment with the respondent on that date.

The petitioner testified that on August 12th, 1927, at about four-fifteen o'clock, while preparing to stop work for the day, he was disconnecting the hose from the air gun which he was using to break up the concrete when the gun slipped off his knee and struck the back·of his hand. He did not notify any-one of its happening. No fellow-employes were produced to describe what happened at that time, or was the failure to produce any such fellow-employes accounted for. Some other witnesses were produced who knew the petitioner and claimed to have been around looking for a position, and who saw the handkerchief draped around the petitioner's hand and testified that he complained of his hand being bruised. Apparently nothing was said about his hand being cut. He did not report this alleged accident until about September 29th. His mother went for his pay but she did not report an accident. He claims that the injury was so slight that.he. did not deem it necessary to report it. The other witnesses produced by the petitioner claimed that they took up a collection on the job; that these collections are very seldom taken up and are usually taken up when the men are not entitled to compensation. The petitioner in a signed statement stated that he stopped at a saloon for drinks on his way home and poured some whisky on his hand. He now denies this but said that he had some whisky late that night. He claims that the statement, which was taken by Mr. Nugent of the United States Fidelity and Guaranty Company, is not true, and that at the time he signed

it he asked Mr. Nugent to make certain changes in it. I have heard the testimony of Mr. Nugent on this question and do not believe that Mr. Nugent was asked to change the statement, but that, as offered in evidence, it is in the form in which the statement was made by Mr. Lukridge. It is admitted by both sides that the petitioner was arrested about midnight on August 12th, 1927, upon charges made by his wife; that the police officer took him to the hospital and had his hand treated. No adequate explanation of this quarrel is given. Mr. Lukridge testified that they quarreled because his wife did not give him proper medical attention. I do not believe this could have been the cause of the quarrel. If he was injured at his place of employment and the injury was so slight that he deemed it unnecessary to report it to his employer, I cannot see why he would quarrel with his wife because she did not give him medical attention or why medical attention was necessary. Mr. Lukridge could not give any detail of the quarrel, except that they had some words.

The hospital records were offered in evidence so far as they related to the history of the case. The petitioner was treated at the hospital for sometime after the alleged accident. A few days after the alleged occurrence, he stated to Dr. Feldman and Dr. Gleason that he sustained an injury while in a fight with another inebriate. The testimony of Dr. Feldman was introduced to this effect. Dr. Gleason was ill at the time of the hearing but the hospital records showing that the petitioner told him the same were received in evidence.

Miss Pickett, employed by the Jersey City Hospital and in charge of the records, was sworn by the respondent and testified that the petitioner came to her after he was discharged from the hospital and wanted her to change the hospital records, which she refused to do. He himself admits that he did this. The petitioner gave as his reason, that he did not want his wife to know he was going to get any compensation as he did not want her to have it. I feel that the most likely story is the one which he gave immediately after his admittance to the hospital.

After a careful examination and study of the testimony and briefs submitted in this case, I find that the petitioner has

failed to sustain the burden of proving that he suffered an accident arising out of and in the course of his employment and that his present disability is the result of such an accident. The question involved in this case is entirely one of fact, and his stories are so conflicting that I am unable to believe the facts as alleged by him. I am especialy impressed with the fact that he failed to report the alleged accident until about a month and a half after it occurred. I believe the story which he told at the hospital; that his injury was sustained in a fight is truthful and the explanation of his injury. It does not sound reasonable to me that he would tell such a story to the hospital, if it was true that he has sustained an accident arising out of and in the course of his employment. He was intelligent enough to know that he had a compensation case if he did sustain an injury while employed by the respondent.

\* \* \* \* \* \* \*

CHARLES E. CORBIN,
*Deputy Commissioner.*